494 So.2d 248 (1986)
Curtis Lee THOMAS, Appellant,
v.
STATE of Florida, Appellee.
No. 85-1184.
District Court of Appeal of Florida, Fourth District.
September 3, 1986.
Certification Denied October 1, 1986.
Douglas N. Duncan of Foley, Colton & Duncan, P.A., West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Georgina Jimenez-Orosa, Asst. Atty. Gen., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
This appeal follows appellant's conviction and sentence. We affirm and note that we have simultaneously issued our opinion in Thomas v. State, 494 So.2d 240, which raises some issues which are similar to those raised here.
On January 30, 1984, appellant was charged by a second amended information with robbery with a firearm of Barbara Rice (Count I); robbery with a firearm of Faye Zimmerman (Count II); sexual battery of Barbara Rice with a firearm (Count III); sexual battery of Faye Zimmerman with a firearm (Count IV); and burglary of a structure while armed with a firearm (Count V).
Appellant entered a plea of not guilty and prior to trial filed a motion to suppress identification, which was denied after an evidentiary hearing.
On April 29, 1985, a jury trial commenced at which appellant renewed his motion to suppress out-of-court identification by Barbara Rice, as well as any in-court identification by Rice, which was denied. Appellant also made several motions for judgment of acquittal, which were denied. At the jury charge conference, appellant requested a special jury instruction on identification, which the court denied. On May 1, 1985, the jury returned guilty verdicts for robbery with a deadly weapon as to Count I; robbery with a deadly weapon as to Court II; sexual battery with a deadly weapon as to Count III; sexual battery with a deadly weapon as to Count IV; and burglary of a structure while armed with a dangerous weapon as to Count V.
On May 15, 1985, appellant's motion for new trial was denied. Appellant was then sentenced. As to Count I, life imprisonment to run concurrent with the sentence imposed in Count III; as to Count II, life *249 imprisonment to run concurrent with Count I; Count III, life imprisonment to run consecutive to a life sentence imposed in an earlier case; Count IV life imprisonment, to run consecutive to the sentence imposed in Count III; Count IV, five years' imprisonment to run concurrent with the sentence imposed in Count III. Appellant thereafter filed his notice of appeal.
On April 15, 1983, Barbara Rice and Faye Zimmerman were working as telephone operators at Palm Beach Radio, Inc., a telephone answering service business. At approximately 2:00 a.m., a stranger appeared inside the building without permission to enter. He was described as a black male, five feet, eight inches to five feet, ten inches tall, one hundred sixty pounds, and wearing a cloth covering his nose to his chin, and sunglasses. Ms. Rice could see his eyes because he was directly under the light. She observed a diagonal scar on the lower left side of the intruder's back. Ms. Zimmerman did not recall seeing any scars. Ms. Rice also described the intruder as having a fairly defined cheekbone, high on the side. She testified that she made an effort to look at the intruder to find any identifying mark to report to the police. Ms. Rice said she was within two feet of the intruder for the entire episode, which lasted approximately twenty minutes. She testified that any time the intruder turned to look at Ms. Zimmerman, she would look at him; that is how she noticed several scars on his back. Ms. Rice noticed a "scar on the lower left side of the back, diagonal, approximately an inch and a half in length, darker in color than the rest of his skin." She also saw a second scar on the intruder's shoulder. Detective Van Dusen testified that Ms. Rice told her on the night of the incident that the intruder had "three scars on the back, mid, lower back, these scars being two, two inches in length and the scars looked like healed knife wounds; one-inch smaller healed wound."
The intruder demanded money and jewelry. He was holding an object which Ms. Rice said felt like a gun when it was pressed to her head. He subsequently ordered both women to remove their clothes and committed sexual battery upon both women.
Investigators were called to the scene, where they discovered prints in the area of the incident which matched neither appellant's nor the two victims' fingerprints. Gertrude Higgins, the identification technician testified that it was possible to touch a surface and not leave a print.
On May 9, 1983, appellant Curtis Lee Thomas was arrested by the West Palm Beach Police Department for the incident which is the subject of 494 So.2d 240, the opinion in which describes chronologically all of the events leading up to the live lineup also involved here, including the preliminary hearing of May 10, 1983, before a county judge, who found probable cause and appointed the public defender to represent appellant. The state sought by motion to compel appellant to appear in a live lineup to be viewed by various victims of unsolved crimes, including Barbara Rice and Faye Zimmerman. On May 17, 1983, a hearing was held on the state's motion. Over an objection contending that Florida Rule of Criminal Procedure 3.220 did not provide for a lineup prior to the filing of formal charges, the court ordered appellant to appear in a lineup. On May 24, 1983, a lineup was conducted at which Barbara Rice identified appellant as her attacker. Faye Zimmerman did not identify anyone. Appellant was then charged with armed robbery and sexual battery on both women, as well as burglary while armed.
A pretrial motion to suppress evidence was filed by appellant in 494 So.2d 240. It was agreed that the results of that motion would also apply to the present case. On November 14, 1983, the trial court entered an order suppressing the evidence secured from appellant at the time of his unlawful arrest on May 9, 1983, but did not suppress the lineup identification, finding that sufficient intervening circumstances had occurred between the time of the illegal arrest and the lineup.
On April 5, 1984, a second motion to suppress identification evidence was filed *250 by appellant. At that time, the parties stipulated to the factual finding made by the trial court in his earlier written order (that appellant had been illegally arrested on May 9, 1983). The only issue was whether there had been sufficient intervening circumstances between appellant's unlawful arrest and the lineup. Appellant's public defender testified that at the time of the hearing on the motion to compel lineup, he did not object to the lineup as fruit of the poisonous tree because he had not been provided discovery (although he had spoken with appellant). The trial court again denied appellant's motion to suppress.
At trial, over the objection of defendant, Barbara Rice testified that she had identified appellant at a lineup. She was also permitted to make an in-court identification of appellant as her attacker. Faye Zimmerman testified that she did not identify anyone in the lineup; and she did not make an in-court identification of appellant.
Appellant was viewed by Ms. Rice, revealing a prominent scar on his neck and groin area. Ms. Rice testified that she did not see or had not had the opportunity to see a scar on the intruder's neck or groin area.
Detective Lou Van Dusen testified that she was present at the time of the lineup and that the scars described by Ms. Rice on the night of the offenses "were quite close" to appellant's scars.

I.
The first issue is whether the trial court erred in denying appellant's motion to suppress identification evidence. We conclude it did not.
This point is essentially identical to Issue I raised in 494 So.2d 240. Appellant again argues that the intervening circumstances between the illegal arrest and the lineup were not sufficient to dissipate the taint. As we held in 494 So.2d 240, the holding of Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), supports the trial judge's finding that the first appearance hearing at which probable cause was found and counsel was appointed for appellant and the hearing on the motion to compel, were sufficient intervening circumstances to remove any taint of the illegal arrest from the lineup. Here again, the only way that appellant distinguishes Johnson is by arguing that a discovery rule, Florida Rule of Criminal Procedure 3.220, provides for a tougher standard than that in Johnson because it requires that formal charges be filed before a lineup is ordered. We have rejected that contention in 494 So.2d 240 and do so here.
We note that the state's inevitable discovery argument is slightly different in this case. As previously stated, Sergeant Thomas indicated that he knew appellant and apparently recognized him when he saw him coming from Mae's Place. Since the officers believed that appellant was the man who had sold the coins, they could have checked his fingerprints on file with those found in Ms. Collins' apartment, which matched. The argument goes on from there that since Ms. Collins' description of appellant essentially matched Ms. Rice's very detailed description of her attacker and the M.O. of the crimes were the same, it would have been normal police procedure for appellant to have been placed in a lineup for identification by Rice. In Nix v. Williams, 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377, 387-388 (1984), the Supreme Court described the inevitable discovery rule as follows:
If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means... then the deterrence rationale has so little basis that the evidence should be received [footnote omitted].
In State v. LeCroy, 435 So.2d 354, 357 (Fla. 4th DCA 1983), this court did not apply this rule, but noted:
[t]he exclusionary rule does not come into play merely because the proffered evidence is in fact the product of an illegal act. If ... the illegal act merely contributed to the discovery of the allegedly tainted information and ... such information would have been acquired *251 lawfully even if the illegal act had never transpired, the presumptive taint is removed, and the apparently poisoned fruit is made whole. In other words, if ... the illegal act was not an indispensable cause of the discovery of the proffered evidence, the exclusionary rule does not apply.
Maguire, How to Unpoison the Fruit  The Fourth Amendment and the Exclusionary Rule, 55 J.Crim.L., Criminology, and Police Sci. 307, 313 (1964).
We choose not to answer the question whether the trial court erred in ruling that the state has not shown by a preponderance of the evidence that the inevitable discovery rule applies. We realize that the inevitable discovery rule is not the same as the independent source doctrine, which the court pointed out in Nix, 467 U.S. at 443, 104 S.Ct. at 2509, 81 L.Ed.2d at 387.
Finally, appellant argues that Barbara Rice's in-court identification of appellant should have been suppressed. In support of this he cites United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), and Howard v. State, 458 So.2d 407 (Fla. 4th DCA 1984), which hold that if it can be shown by clear and convincing evidence that an in-court identification was independent of the lineup identification, then the in-court identification is admissible. Because this court agrees with the trial court that the lineup was admissible, then the in-court identification would also necessarily be admissible. Moreover, we believe it was shown in this case by clear and convincing evidence that the in-court identification was independent of the lineup identification.
Ms. Rice testified she was looking for something different about the intruder that would help her identify him to the police. She gave a detailed description of the intruder and testified that she was within two feet of the intruder throughout the incident which lasted nearly twenty minutes. She stated that the intruder wore tinted glasses but that she could see his eyes because they were under direct light; and she testified that the cheekbone area of his face was "fairly defined, high on the side." She also noticed several scars as previously discussed. The record further indicates that she did not hesitate in choosing appellant from the lineup.

II.
The second issue is whether the trial court erred in denying appellant's special requested jury instruction on identification. We conclude that it did not.
Again, the instruction requested by appellant read as follows:
Identification
The State of Florida must prove beyond a reasonable doubt, that the crimes charged in this case were actually committed. But more than that, the State of Florida must also prove beyond a reasonable doubt, tha [sic] the Defendant, CURTIS THOMAS, committed the crimes. If you are not convinced beyond a reasonable doubt that it was the Defendant, CURTIS THOMAS, who committed the crimes, you must find him not guilty. (See, United States v. Telfaire, 469 F.2d 552 (D.C. Cir.1972).
Appellant contends that the jury instruction as read by the judge does not adequately inform the jury that the element of "identity" is an element which must be proved beyond a reasonable doubt. A reading of the instruction, however, reveals otherwise.
The trial court denied appellant's instruction, stating:
THE COURT: I am going to deny it for this reason:
That it is adequately covered on Page 12 of the standard jury instructions and also on Page 14, paragraph number one of the standard instructions but now this is without prejudice for you to argue what you have said in here.
The trial judge instructed the jury as follows:
The defendant in this case has entered his plea of not guilty. This means that you must presume or believe the Defendant *252 is innocent. The presumption stays with the Defendant as to each and every material allegation in the Information, through each stage of the trial, until it has been overcome by the evidence beyond and to the exclusion to every reasonable doubt.
To overcome the Defendant's presumption of innocence, the State of Florida has the burden of proving the following two elements:
Number one: The crimes with which the Defendant is charged were, in fact, committed and
Number two: The Defendant is, in fact, the person who committed the crimes.
The Defendant in this case is not required to prove anything.
Whenever the words reasonable doubt are used you must consider the following:
A reasonable doubt is not a possible doubt, a speculative, imaginary or forced doubt. Such a doubt must not influence you to return a verdict of not guilty if you have an abiding conviction of guilt.
On the other hand, if after carefully considering, comparing and weighing all the evidence, there is not an abiding conviction of guilt or if you have a conviction but it is one which is not stable but one which wavers and vacillates then the charge is not proved beyond every reasonable doubt and you must find the Defendant not guilty because such a doubt is a reasonable doubt.
It is to the evidence introduced upon this trial and to it alone that you are to look for such proof.
A reasonable doubt as to the guilt of the Defendant may arise from the evidence or it may arise from a conflict in the evidence or it may arise from a lack of evidence.
If you have a reasonable doubt, you must find the Defendant not guilty. If, however, you have no reasonable doubt, you should find the Defendant guilty.
It is up to you to decide what evidence is reliable. You should use your common sense in deciding which is the best evidence and which evidence should not be relied upon in considering your verdict. You may find some of the evidence not reliable or less reliable than other evidence. You should consider how the witness acted as well as what they said.
... .
As to Count One, if [you] find the Defendant not guilty or if you have a reasonable doubt under the evidence as to his guilt, the form of your verdict must be:
We the jury find the Defendant Curtis Lee Thomas not guilty of Count One of the Second Amended Information. So say we all and your foreman would date and sign that verdict form on the lines provided.
If, however, you find the Defendant guilty of the crime charged in Count One, robbery with a deadly weapon, to wit: A firearm, beyond a reasonable doubt, then the form of your verdict must be:
... .
Now, as to Count Two, if you find the Defendant not guilty or if you have a reasonable doubt of his guilt under the evidence, the form of your verdict must be:
We the jury find the Defendant Curtis Lee Thomas not guilty of Count Two of the Second Amended Information. So say we all and your foreman would date and sign on the lines provided.
... .
Count Three. If you find the Defendant not guilty of the crime charged in Count Three or if you have a reasonable doubt of his guilt under the evidence, the form of your verdict must be:
We the jury find the Defendant Curtis Lee Thomas not guilty of Count Three of the Second Amended Information. So say we all and your foreman would date and sign on the lines provided.

*253 If, however, you find the Defendant guilty of the crime charged in Count Three beyond a reasonable doubt, namely sexual battery with a deadly weapon, the form of your verdict must be:
... .
As to Count Four, if you find that the Defendant is not guilty of the crime charged in Count Four or if you have a reasonable doubt of his guilt under the evidence, the form of your verdict must be:
We the jury find the Defendant Curtis Lee Thomas not guilty, Count Four of the Second Amended Information. So say we all and your foreman would date and sign on the lines provided.
If, however, you find the Defendant guilty of the crime charged in Count Four, sexual battery with a deadly weapon beyond a reasonable doubt, then the form of your verdict must be:
... .
Now, Count Five.
If you find the Defendant not guilty or if you have a reasonable doubt under the evidence as to his guilt, the form of your verdict must be:
We the jury find the Defendant Curtis Lee Thomas not guilty, Count Five of the Second Amended Information. So say we all and your foreman would date and sign on the lines provided.
If, however, you find the Defendant guilty of the crime charged in Count Five beyond a reasonable doubt, namely burglary of a structure while armed with a dangerous weapon, the form of your verdict must be:
Since the requested instruction did not add anything to the instruction actually read, it was not error for the trial court to deny appellant's special instruction. Bailey v. State, 411 So.2d 1377 (Fla. 4th DCA 1982) (trial court did not err in denying defendant's requested jury instruction where it added nothing to standard instructions).
DOWNEY, J., and WETHERINGTON, GERALD T., Associate Judge, concur.